May I invite Mr. Guarnieri to come forward? Please approach the bench, and Judge Previnger has a motion. I move the admission of William Peter Guarnieri, the bar of this court. He's a member of the bar and is in good standing in the highest courts of the Commonwealth of Virginia and the District of Columbia. I have knowledge of his credentials, and I'm satisfied that he possesses the necessary qualifications. I can say that because I'm proud to say that Mr. Guarnieri has served as one of my law clerks for the last 12 months, and he's served my chambers and this institution with great skill and great distinction. It's been an honor to have him working for me, and I rest on my motion. Thank you, Judge Clevenger. The panel will vote. Do you vote to grant the motion? The recommendation from Judge Clevenger is very meaningful, and I support it. And I concur in the grant of the motion, so welcome to the bar of the court. Please approach the clerk who will administer the oath. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Welcome to the bar of the United States Court of Appeals for the Federal Circuit. Thank you very much. Welcome to the bar, Mr. Guarnieri. Thank you, Your Honor. Okay, to proceed with the agenda, Mr. Peterson. The first argued case is number 16-1407, West Alpine Stove, GMBH, against Darcella Ork-Mittal. Mr. Peterson. Good morning, Your Honor. My name is Max Peterson. I represent the appellant, West Alpine Stove, GMBH. Your Honor, the board found claims 3, 4, 13, 30, and 41 to be patentable over Laurent in view of Mittal's handbook, Kawasaki, and Blumel. Based on the opinion, the board did not adequately consider the content of this prior art. Instead, the board relied far too heavily on other prior art, especially Mieler, and imputed those findings to Laurent. Laurent is very different from Mieler. The claims on appeal, among other things, require hot forming of a steel part that is coated with zinc or a zinc alloy. The coating then forms an alloy compound when the steel sheet is heated, and the alloy compound is actually an intermetallic compound between the coating and the steel sheet. So when we're talking about a zinc or a zinc alloy coating and an alloy compound, the latter refers to the reactive product with the steel sheet. Now, this alloy compound is what prevents melting of the coating and enables the hot forming to occur. The main difference between Laurent and the claims on appeal is that Laurent hot forms a steel sheet that's been coated with an aluminum alloy containing 2-4% iron, in one example, instead of zinc or a zinc alloy, and the alloy compound thus formed in Laurent is based on aluminum and iron instead of zinc and iron. Now, the opinion of the board sets forth at least four key factual findings for Mieler that cannot possibly be imputed to Laurent, and these are all on page 9 of the decision. First, the board criticized Mieler for teaching away from hot forming. Laurent describes the hot forming process. Second, the board criticized Mieler for teaching that a zinc-based metal coating remains partially molten at hot forming temperature in Mieler, and then Mieler went up to about 800 degrees centigrade, even though it wasn't a hot forming reference. It did describe that temperature, and it said that the zinc remains partially molten, and the board found that this partially molten state would have taught against hot forming and would have discouraged hot forming. Yet, Laurent successfully hot forms a metal-coated part at temperatures of 750 to 1200 degrees centigrade. Using aluminum? Using aluminum, which has a melting point of 660 degrees centigrade. So, what is your argument as to why it would have been obvious in view of all of the citations to, shall we say, to use zinc instead of aluminum at that stage? Well, on this particular point, my argument is that, in the example of Laurent, it hot forms aluminum at 900 degrees centigrade successfully, which is 240 degrees above the melting point of aluminum. So, this molten state of a metal, the fact that a metal is expected to remain molten at that temperature, does not weigh against hot forming, because in hot forming, you quickly form an alloy compound which has a higher melting point and increased hardness and better properties, and that's what Laurent teaches. So, that's aluminum. So, why, in your view, in view of the citations, in view of the record, in view of the known melting point of zinc, would it have been obvious to make the change? Well, one of the alloys, and in particular, the alloy in Kawasaki, which is a zinc which has 8 to 10 percent iron, has a melting curve, if we can show it on the TV screen or otherwise, and A350 and A351, I believe I did submit a slide for, there we go, okay. Now, if you look at the left-hand curve, that is a melting curve for a zinc-iron alloy, and in the Kawasaki reference, and the claims are all broad enough to cover this, the coating doesn't have to be zinc, it can be a zinc-iron alloy, and in Kawasaki, that alloy contains 8 to 10 percent iron. Now, the melting point is shown on the left-hand curve. There's a horizontal line which represents the melting point of that zinc-iron alloy, which is about 1,055 degrees Kelvin, which is 782 degrees centigrade. Is that illustration in the appendix? Is that illustration in the appendix? Yes, A350 and A351, and I had submitted the exhibit showing them side-by-side, and also, the side-by-side is shown, I believe, in our reply brief. The numbers, from my eyesight, the numbers are a little easier to read in the appendix over there, and that's why I asked. Thank you. Okay, but I wanted to show them side-by-side. So, as you can see, this 8 to 10 percent alloy has a melting curve where you start to form liquid at 1,055 degrees Kelvin, which is 782 centigrade, and that exact temperature has been verified by the ArcelorMittal's expert, Professor Diardo, and I believe it's at A393. You have a melting point which rises monotonically to 782 degrees centigrade, and it stays at 782 degrees centigrade. If you compare that to the aluminum on the right, the horizontal line is at a lower temperature, which is 933 degrees Kelvin, or 660 degrees centigrade. So, if you're relying on pure zinc, I can understand the argument, but these claims are broad enough to cover a zinc-iron alloy, and the zinc-iron alloy, which is described in Kawasaki, and which is covered by the claims, actually has a melting point which is 120 degrees centigrade higher than the melting point of the aluminum described in Lorent. And that, to me, is enough to put it on the map as being a logical interchangeability for purposes of hot forming. Lorent describes zinc-based coatings in the background. It says they are known. It doesn't hot form using zinc. Kawasaki goes in and teaches the zinc-iron alloy as being interchangeable with aluminum and some other things for purposes of providing increased corrosion resistance. So, it's known as a plating alloy. The zinc-iron alloy is known for plating. It's known just as well as aluminum. The temperatures in Kawasaki are on the range of 750 to 1000 degrees centigrade, although it is a hot plating process. It's not a hot forming process. And there's no mention of any runoff or evaporation or anything else. They don't seem to have that problem. So, clearly, there's been a lot of argument on the melting point of zinc being 420 degrees centigrade, and I can understand that. But the claims go up to an alloy which has a melting point of 782 degrees, which is actually much, much hotter than the melting point of aluminum. And if you can hot form aluminum under those conditions in Lorent, then why not a zinc-iron alloy that has even more favorable melting properties? You would be 240 degrees centigrade above the melting point of aluminum at a 900 degree hot forming temperature. You're only 120 degrees centigrade above the melting point of this alloy. The melting curve is actually more favorable. Now, and this was really one of the main differences. So, this argument that you're within the melting range, although there is a more favorable melting curve, the fact remains that the hot forming temperatures in Lorent are high enough to put both Lorent and the zinc-iron alloy in the liquid state. So, either one is going to be molten, and a fair reading of Lorent is that you can hot form, notwithstanding the fact that you're above the melting temperature. The reason is because you rapidly form this alloy with the iron and the steel, and as the alloy forms, the melting properties get better and better, and the material gets harder and harder. That's actually shown in both of these curves. You can see, if you look on the right, as you go higher in iron content for aluminum, the melting temperatures go up. And you see the solid line, which is the start of melting, and then the upper line is where you reach all liquid. In between there, there's a mixture of solid and liquid. The same thing on the left for zinc and iron. You have that horizontal line, which is your melting curve for the alloy, where you start to melt, and then when you get above that higher line, you're at all liquid. Those temperatures go way up as you get more and more iron in the alloy, and this is what happens very quickly during hot forming. Even though they are both liquid at that temperature, this alloy, as described in Lorentz, is forming quickly enough to where the melting just isn't a problem, and you're getting this alloy, and you're able to hot form anyway. Another key finding, the board criticized Miller for teaching that the high temperature of 815 degrees centigrade can only be maintained for a few seconds. And they said that that teaches away from hot forming because hot forming requires heating on the order of minutes. Lorentz, in the example, describes a 900 degree temperature being maintained for five minutes. So Lorentz overcomes that deficiency in Miller as well. Finally, the board found that unreliable expert evidence was used to combine Miller with the secondary references. Our basis for combining Lorentz with secondary references came strictly from the references and not from experts. We didn't rely on experts at all. Lorentz teaches both zinc and aluminum coatings in the background. Kawasaki states in paragraph 14 that aluminum coatings are interchangeable with zinc-iron alloy coatings for corrosion resistance, and that was our primary basis for combining. So I think a fair reading is that the zinc alloy is forming so fast as well as the aluminum alloy described in Lorentz. The alloy forms so fast that the melting point is hardly irrelevant. But in summarizing what I just said, even if the melting point were irrelevant, the zinc-iron alloy described in Kawasaki has a more favorable melting point for hot forming than the aluminum coating in Lorentz. So why wouldn't that substitution be pertinent? Now, patent owner's expert professor Diardo, as well as the 604 specification, indicate that discovery of the zinc-iron alloy compound was a quote-unquote core inventive feature that enables hot forming by preventing melting and flow of the coating during hot forming. And the term core inventive feature was Diardo's own language at A406. We previously relied on the Blumel reference, A770, as teaching that zinc-iron alloy compounds were known to form, but by heat treating the zinc-coated sheet. Patent owner has now admitted, and it looks like it's contrary to their own expert, that the zinc-based coatings were known to form alloy compounds with a steel surface when heated. And this is in the patent owner's brief at pages 10 and 13 to 14. So our position on this rejection is that where both metals were known to form alloy compounds and where both metals were disclosed in Lorentz, it would have been obvious to substitute zinc or the higher melting zinc-iron alloy for the aluminum-based coating in Lorentz hot forming process. Claim 42 was treated separately from the other claims. Claim 42 depends from Claim 1 and recites a property. It recites that the alloy compound provides cathodic galvanic protection. There's no dispute, however, that even conventional zinc-based coatings that were not alloyed were known to provide cathodic galvanic protection. And this is recognized in the decision at page 1011. It's also at A2021, A234, A316, and various places. There's no dispute that zinc provides cathodic galvanic protection. Now, the board's opinion addressed the cathodic galvanic protection of aluminum coatings in Lorentz, but did not address the zinc-based coatings described in the background of Lorentz as we had advocated at the hearing at A301. A person of ordinary skill in the art, armed with the teachings of Lorentz, would have known to substitute a zinc-based coating for aluminum in hot forming if his or her objective were to provide increased cathodic galvanic protection. So in summary, the board's findings of patentability were not supported by substantial evidence. The board did not adequately consider the Lorentz prior art combinations, and instead relied too heavily on other prior art. Thank you. Thank you, Mr. Peterson. Mr. Cushing? Yes. That please the Court, Your Honors. I'm David Cushing. I'm here to speak on behalf of ArcelorMittal, the appellee and patent owner. And I'll try to speak up. I'm not naturally good at that. Your Honor, this case is really about common sense. The claims are all directed, as my colleague here described, to It's not really common sense, is it? The real question is whether the substitution of zinc for aluminum in the process that's used was obvious. Yes, that's correct, Your Honor. You're saying common sense says it's not? Your Honor, there is liquid when you heat There are several points. The first one is when you heat a zinc or zinc-based alloy coating to temperatures of hot forming, there will be liquid zinc in the coating at the time you stamp it. And if you simply look at figure one of the patent here, at appendix page A32, and look at that stamp, and they have the coating demarcated, imagine what's going to happen when you press that under high pressure on a stamp and you've got liquid in the coating. Intuitively, it seems like a problem. Second problem is that You say that's true whether the coating is pure zinc or whether it's a zinc alloy? There is liquid zinc in the coating. And we have a, if you look in the appendix at page A478, there's actually an excerpt from an article by Appellant's own technical staff that has a diagram of the course of heating through hot forming and showing the content of these materials. And they describe this as a zinc-based coating. And it starts out with some molten zinc at 420 degrees, and then it starts to alloy, but at the time you finish heating this, when you are, in this case, at 780 and then 850 degrees C, there has been a lot of intermetallic alloy formed, but there is a lot of liquid zinc still in the coating at the time this goes to the press. And so there is liquid zinc in the coating, and that's only the first half of it. The other issue is that if you look at page A167, which unfortunately is a black and white figure, but it is reproduced, I believe, in our Appellant's brief at page 33, the Appellee brief at page 33, there is a diagram of vaporization temperatures. And all of the comments in the prior art where the artisans were saying that zinc is a problem with hot forming. It won't work with hot forming. The things they mentioned were it's going to melt and flow. Also, it's going to vaporize. The vaporization temperature of zinc is 908 degrees. The vaporization temperature of aluminum is 2470. At the 900 to 950 degree temperatures of hot forming, we're still more than 1500 degrees below the vaporization temperature of aluminum. But if you have liquid zinc in the coating, and we know there is liquid zinc and their own people have said that, even if it's an alloy-based coating. Well, the issue isn't the vaporization temperature. It's the melting temperature. Well, Your Honor, it's both. If you have liquid zinc and you have a liquid and you raise it above its vaporization temperature, it's going to vaporize. You're talking about melting, not vaporizing. Well, it's already melted, Your Honor, at the 950 degree hot stamping temperature, and the question is what next. The artisans thought that a big concern was that if you raise the temperature of your hot forming, if you raise the temperature of this alloy to something that is at or above the vaporization temperature, it's going to melt and it's going to disappear. It'll distill out. It will be gone. And then you don't have your zinc-based cathodic protection anymore. This is a curious argument. It can certainly melt without vaporizing. That's correct, Your Honor, but the artisans were concerned that it would vaporize. After it melted, it would then vaporize. When you... In order to prevail, do you need to show that the vaporization temperatures between zinc and aluminum are so disparate? We don't believe we have to show that, Your Honor, but we do think that it's a factor in why somebody of skill in the art was concerned. It's mentioned in the... Couldn't you make your case based on melting alone? Yes, we could, Your Honor, because people thought the... Isn't that what the board did? No, it's not, Your Honor. The board mentioned the same things that the comments in the art mentioned about melting, and they said that vaporization was a concern. And vaporization is. It's what people... In our brief at pages 22 and 26 to 31, there's a whole laundry list of comments by experts, our own expert, the requester's experts, the requester's own technical staff, that said the melting and vaporization were going to be a problem. It's going to run off and follow the tools, but also they mentioned vaporization because it's like taking water above the boiling point of water. It turns into steam and it's gone. So it is... The point, Your Honor, is that the aluminum and zinc are very different materials, and the fact that you succeed with aluminum doesn't mean that you would succeed with zinc. The phase diagrams here have been around for 100 years, and people in the art, despite those, we can assume that most people would know about phase diagrams, they were all concerned that things were going to melt. They were concerned that things were going to vaporize. They were concerned that it just wasn't going to work. And what's happened here is we're going back with another lens trying to find a scientific explanation for why it works. And that's kind of saying, well, here's what the artisan should have thought. But the fact is, and the evidence shows, that what the artisans did think is that this isn't going to work. The Patent Office considered all of this evidence and gave a very thorough opinion, and the question is whether there's substantial evidence to support those facts that they found. And we believe that the evidence is not just substantial, but it's compelling. What we have here is not a reasonable expectation of success, but a very firm belief, expectation, that it wasn't going to work, a failure. But it did work, didn't it? It did work, Your Honor. That's correct. And why did it work? It worked because the alloy, not because the alloy formed. Actually, Your Honor, there's a difference of opinion, even now. We have in the... This was an exhibit we used, a demonstrative, at the oral hearing at the Patent Office. I've already given him a copy I can use. We didn't clear it for demonstrative here. During the reexamination proceeding, 15 years after the fact, we have three requesters trying to explain why this is obvious. We have three different explanations for why it works. One of them says that the alloying with iron occurs, and that's what keeps the runoff, the liquid from running off. Another says that it's zinc oxide that makes this work. And another one says that it's aluminum oxide, and that zinc oxide, if you have too much of that, that's bad. And these were experts. These were counsel. I mean, 15 years later, there's still no coherent explanation as to exactly why this works, but it did work. I assume it's your view that even though it was expected that it wouldn't work, the fact that it did work doesn't negate the reasonable belief that it wouldn't have worked. That's correct, Your Honor. There was widespread belief that it would not. The fact that it did was unexpected. Even Laurent, that's relied on here as the primary reference, and my colleague here points out that Laurent does mention zinc in the background, but mentions zinc and aluminum in the background as coating materials and then spends the entire specification on all of the claims describing and claiming aluminum, and only aluminum. We think it's pretty clear that the reason it did that is they didn't think zinc would work. There was no effort. There doesn't appear to be any effort or any thought given in the specification to this has more broad application. Aluminum worked because it had different properties. They had found that it worked. But zinc, at the very best, what may be happening here is if aluminum worked, you can say, well, one of them worked, maybe I'll try another. But that's not the standard for obviousness. Obviousness has to be a reasonable expectation. In fact, there's no obvious reason now why it did work supports the unobviousness to begin with. Well, there are explanations, scientific explanations, in the case of every invention as to why something worked. If it didn't work, we wouldn't be here. So everything works, and presumably everything has a scientific explanation. And it may be a lot easier to find those scientific explanations years after the fact than it was at the time. At the time, there wasn't an issue about the alloy being formed. People knew what intermetallic alloys were. The whole purpose of Miller is to make a steel sheet with this intermetallic alloy formed on it. But Miller, at temperatures that are below the temperatures that we have in hot forming, his coating is liquid. And he goes to a great deal of trouble to make sure that nothing touches that until he has passed it through a cooling zone. And then only then does he pass it over a roller where it touches something. We're going to take the material that's hundreds of degrees higher than what Miller is talking about, and we're going to put it in a stamp and crush it. Most people didn't think that would work. The ordinary person in the art didn't think that would work. The issue below has always been whether somebody of ordinary skill in the art would have had a reasonable expectation of success in hot stamping a zinc alloy-coated steel. The issue below has never been. Claim 13, which calls for the coating to be zinc, that was the patentee just wishing on a star. I'm sorry, Your Honor. The patentee is just wishing on a star. He has no idea. He doesn't think it's going to work. Everybody in the science says it isn't going to work. So it's sort of like just throwing a dart up in the air. Then you've got a patent. Just guess. It's guesswork? Sometimes inventions can be guesswork. I wasn't there when this actually happened, so I don't know how this particular decision was made to try zinc. But anybody who said anything about this prior to April 6th of 2001 when this went… Was it enabled? Has there been any question about enablement? There has been no issue raised with respect to enablement, and there were some questions below. There were some enablement rejections proposed. They were not adopted or they were reversed, but there was no issue here about enablement. There is a very careful explanation in the specification of how to do it. There are a couple of different examples, and it works. So we have something that people didn't think would work. We have quotes even after the fact. Ten years after the fact, people are saying that it was thought that the runoff would be a problem and the vaporization would be a problem. Even on their own website today, the appellant has a description about hot forming of zinc and says that it was originally thought to be impossible. It may not be impossible now when we look and see that it works, but back then there's no prior art that they have shown that preceded April of 2001 that showed that anybody understood that this was going to work. Is there a special process that now is known to make it so it does work? Maybe they heat the stuff up more slowly and try not to bring zinc to the danger area? I'm sure there are ways that they tweak it to make it better, but what appears to be happening is that we know that the alloy forms. The diagrams here are equilibrium diagrams that will show you what these things look like at a certain temperature if they're sitting. What it doesn't tell you is how this material is going to behave physically when you do something to it, when you stamp it. It doesn't show whether there are oxide layers that form. It doesn't show what shear strengths there are. So you can look at this and say, well, somebody should have looked at that and said, geez, the melting temperature is up here, there's going to be an alloy there. That's not going to be that much of a problem. But the fact is that they did know there was going to be liquid zinc. Even their own technical staff in the paper that I just pointed to says there's going to be liquid zinc. There are a couple of other publications by their technical staff, and they cited in our brief. This is going to be a problem. Everybody thought that it was going to be a problem because, just common sense, you're going to hot stamp something that has liquid in it, and you're going to be above not just the melting temperature but above the vaporization temperature. If any of that leaks out, it's going to be gone. You're already going to turn to vapor and disappear. So it's a very fragile state. All that's happening now is we're getting an explanation for why it works, but no evidence that outweighs what was of record in the patent office that shows that somebody actually understood that it would work or had a reasonable expectation of success. At best, it's obvious to try, but only at best. Any more questions for Mr. Cushing? Thank you, Mr. Cushing. Okay, Mr. Peterson. Your Honor, the explanation as to why the zinc can hot form was presented several times during this case, and I'm referring to A406, which is a quote by Professor DiArto, which is Arsher Middle's expert, where he says, perhaps most importantly, when describing the core inventive feature of the patent, the specification states, and this quote's from the specification, contrary to preconceived ideas, during heat treatment or temperature rise for hot forming, the coating forms a layer alloying with the steel of the strip and presents then a mechanical resistance such that it prevents the coating material from melting. Now that coating, which he's referring to, which is allegedly surprisingly and unexpected, is the alloy compound, which is referred to in the claims. This is the alloy compound, which we have discussed. Now then we got to the appeal brief, and we have now on page 10 and again on page 13 and 14 a quote where patent owner has readily acknowledged that it was known to use a zinc-based alloy coating to form an alloy compound with a steel surface. Now that totally goes against their expert, but the alloy compound, we agree that it was known. It was known to form this, and it was known from Blumel, and we had pointed this out on our briefs that the Blumel reference describes heating a zinc-coated steel sheet to form an alloy compound. So once you take away the core inventive feature, you're really just down to where, while it was known from Laurent to form an aluminum-based alloy compound, it was also known to form a zinc-based alloy compound, depending on whether you want to go by the admission or whether you want to go by Blumel. And then Laurent discloses zinc, so why not just substitute one for the other, especially when you know that the zinc-iron alloys that can be used as platings already have more favorable melting points, more favorable melting curves than aluminum. But aren't the claims that were allowed all limited to the process? They are limited to a process. So applying the hot forming after the zinc coating was on the steel? Yes. Yes, they are limited to using a zinc or a zinc alloy, and they all require the formation of an alloy compound from what can be either a zinc or a zinc alloy coating. Now, Pat Hunter has referred to the patent itself in Figure 1 as to why this would work, and then he said that while it was previously believed that maybe during hot forming you'd have all these problems, but now Figure 1 shows the preheating in an oven of the zinc coating at 800 to 1200 degrees centigrade for 2 to 10 hours. Any alloy compound which is going to form is going to form before you get into that stamp in those 2 to 10 hours. That is a very long time. So our position is that there's really nothing here. You form the alloy compound by the heating. That was known in the art. It was known from Lorentz. It's been admitted now that it was known. And you put it in a press, which is known from Lorentz, and you use those temperatures of Lorentz, and you get the same result with zinc that you would have expected from Lorentz and expected from the prior art and from the emission, the formation of an alloy compound. Thank you. Thank you, Mr. Peterson. Thank you both. The case is taken under submission.